IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
RICHLAND DIVISION

| | |
|---|---|
| Ms. Kourtney Moody<br>　　　　　Plaintiff,<br><br>　　　v.<br><br><br>PepsiCo-Pepsi Beverages North America,<br>and Conspiracy as to Kristina Crawford, in<br>her individual and official capacity, and<br>Michael Rady, in his individual and official<br>capacity.<br>　　　　　Defendants. | Case No.: 3:24-cv-4168-MGL-SVH<br><br><br><br>**COMPLAINT**<br>Jury Trial Requested |

INTRODUCTION

Ms. Kourtney Moody, by and through her undersigned counsel, brings the Causes of Action in violation of 42 U.S.C. § 1981 Race Discrimination and Hostile Work Environment. The Plaintiff also brings forth claims of Breach of Contract, Breach of Contract Accompanied with Fraudulent Intent, and Conspiracy as to Defendants, Kristina Crawford (HR Director of Carolina's & Virginia) and Michael Rady (HR Vice President of South Division), in their individual and official capacities, based on the following allegations.

ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

JURISDICTION AND VENUE

1.  The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343, and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1981 and other Federal statutes. This Court

also has pendant, ancillary, and supplementary jurisdiction over so much of this action as it is based on State law.

2. Venue is proper in the Richland Division because the Causes of Action arose therein, the acts and practices complained of occurred there, and it is where Defendant does business and may be found.

<u>PARTIES</u>

3. Plaintiff Kourtney Moody is a citizen of the State of South Carolina and resides in Kershaw County.

4. Defendant, PepsiCo-Pepsi Beverages North America, is a business entity branch in West Columbia, South Carolina, which is formed and administered under the laws of South Carolina in Richland, County, South Carolina.

<u>FACTS</u>

5. Plaintiff is a 34-year-old African American woman who began working for PepsiCo Beverages North America in a variety of roles beginning on June 4, 2012, till December 1, 2023. Plaintiff earned the position of Senior GM Market Director beginning August 23, 2021, over the Carolina's Market where she grew exponentially as an employee until her untimely departure on December 1, 2023.

6. Plaintiff worked tirelessly and diligently for Defendant for 11.5 years and consistently worked to put her colleagues' and Direct Reports' needs first. The Plaintiff has improved the business culture and market of PepsiCo for the better so that the business always runs effectively and efficiently.

7.  Plaintiff prided herself on being an exemplary employee and in the 11.5 years Plaintiff worked for Defendant, she never received any disciplinary action or even a write-up from her supervisor(s), or previous department heads.

8.  As a result of Plaintiff's hard work and dedication to Defendant, Plaintiff was awarded the position of Senior GM Market Director through her former GM Vice President over the Metro Region on August 23, 2021.  This position covered the following locations: Anderson (SC), Beaufort (SC), Cherryville (NC), Columbia (SC), Greenwood (SC), Ladson/Charleston (SC), Metter (GA), Rock Hill (SC), Savannah (GA), and Spartanburg (SC) with over 1,100 employees and approximately $475 million in annual net revenue.

9.  At the end of 2021, Plaintiff received one of the highest Personal Development Review (PDR) annual ratings in which she received a raise on top of her normal raise and extra stock options in addition to the normal stock options given to her when she was initially hired.

10. Plaintiff held the position of Senior GM Market Director for over a year before Defendant Kristina Crawford became the HR Director over the Carolina's around September 2022.

11. On October 24, 2022, while Plaintiff was attending an in-person program on behalf of PepsiCo at the Wharton School of Business in the Global GM Executive Education Program located in Philadelphia, Plaintiff received a phone call from PepsiCo Metro Market Safety Director, Carrie Layton, informing her that one the merchandisers who worked at the Rock Hill location had died in a car accident while driving to a store earlier that day. The Plaintiff inquired as to whether her presence was needed

immediately to support the team but was reassured that the state troopers were handling the situation and that the family had been informed.

12. Later that night at approximately 11 p.m., Plaintiff received a phone call from former HR Market Senior Rep. Elizabeth Adams who informed her that there had been a death in the warehouse in the Columbia facility.

13. Plaintiff discussed the death and game plan moving forward with Larry Chatman (Columbia Warehouse Manager), Shannon Moses (Columbia Unit General Manager), and Elizabeth Adams throughout the rest of the night and into the morning. They informed her that the coroner and the family of the deceased employee were on site, and everyone in the plant was distraught and scared. Plaintiff immediately took the initiative to book a flight back to Columbia for 5 a.m. and informed the program leaders she would not be in attendance that week due to an urgent matter.

14. Throughout these tragic and unforeseen circumstances, Plaintiff was able to lead her team competently and address any concerns or needs they might have had during this time.

15. Not once did anyone ask the Plaintiff how she was doing during this entire ordeal and traumatic situation.

16. Upon her return to Columbia, SC around 9:45 a.m., Plaintiff immediately headed to the plant to direct her efforts on addressing the safety concerns at the Columbia location with Metro Safety Director Carrie Layton, and Safety Manager for the Carolina's Market, Connor Wagner.

17. From October 26 to October 31, 2022, Plaintiff, Carrie Layton, and Connor Wagner were instructed by Defendants Kristina Crawford and Michael Rady to have meetings

with all of the workgroups at the Fairfield Inn Hotel in Columbia, SC as plant

operations at the Columbia warehouse were shut down for almost a week.

18. During one of the breaks, the HR team continuously made back-handed comments to

Plaintiff about how impressive it was that she knew almost all the front-line and

warehouse employees, who at the time were 95% African American, by name and

that she learned things about them. Plaintiff observed that Defendant Kristina

Crawford showed disdain and contempt towards Plaintiff when these remarks were

made.

19. A few days later, Plaintiff met with the driver team to provide updates to them post-

accident. One of the drivers voiced concerns about store managers being upset about

not getting deliveries for over a week due to the accidents. The Plaintiff assured

drivers that the matter was under control but if any issues arose to have the customers

contact her personally.

20. Weeks later, Defendant Crawford verbally reprimanded Plaintiff for taking the

initiative to address the concerns of customers due to a plant closure was her showing

selfishness, and that as HR Director, she would take every opportunity she could to

call this out to her in the future if this occurred again.

21. In the days following the accidents, Plaintiff's efforts to get much-needed repairs

fixed within the Columbia warehouse were thwarted by false promises made by

Senior Leadership team members including Defendant Vice President Michael Rady.

Shortly thereafter at the direction of Defendant Rady, the leadership team picked

apart the warehouse stating multiple things that needed to be fixed while

simultaneously apologizing that the company allowed for decades these repairs to go unnoticed. The Plaintiff was later pretextually blamed for these repair failures.

22. One of the major repairs needed in the Columbia warehouse was the removal of old ammonia columns for the warehouse where they used to bottle drinks in the 1980s. The Plaintiff and her team compiled a list of all the items in the warehouse needing repair and was presented to Senior Leadership. Over 12 months went by after the accident and Plaintiff was consistently being told that the repairs were too expensive to be completed and were not approved.

23. In November of 2022, Plaintiff received a phone call from her Manager, Cyril Wallace, asking if he had the approval to talk to some people on her team, similar to a roundtable format, and that he wanted to give Plaintiff a courtesy heads up. Plaintiff agreed to such a discussion, not realizing that this discussion was a guise to find negative attributes about Plaintiff's work ethic and interactions with her team and co-workers.

24. On November 9, 2022, Plaintiff surprisingly received three separate phone calls that evening from three of her Unit General Managers: Adonis Fisher (Savannah), Jason Carrigg (Rock Hill), and Joe Birchfield (Spartanburg) concerning the roundtable discussion Defendant Kristina Crawford conducted.

25. Each of the three phone calls that Plaintiff received from her Unit General Managers expressed that they thought the roundtable discussion went well and what exactly was discussed. Each Unit General Manager praised Plaintiff during the discussion for being an awesome leader who constantly put them first and had changed the Carolina's Market environment for the better and she allowed them to run their

business effectively and independently. They applauded the Plaintiff and stated that they all liked working for her, that she had helped to reverse the debilitating cycle of the market, and that her support and help were always appreciated. They thanked the Plaintiff for the hard work and dedication she put into the company and for making sure their needs as Unit General Managers were addressed.

26. The three Direct Reports also stated that during the discussion Defendant Kristina Crawford continuously harassed them about anything that might tarnish Plaintiff's hard work ethic. Jason Carrigg spoke up for Plaintiff and stated if there was anything bad to be said about Plaintiff it was that she does not take enough personal time and works a lot. However, Defendant Crawford continued to press all the Unit General Managers about any indiscretions Plaintiff might have committed.

27. The team expressed on multiple occasions to Plaintiff that Defendant Crawford made them uncomfortable, that she continuously inquired about misdeeds committed by Plaintiff, and that they ultimately did not trust her. Like Plaintiff, a majority of the team had never met Defendant Crawford in person, and she never came to the market when Plaintiff was the Senior GM Market Director over the Carolina's to spend time with the field teams.

28. Between November 2022 to December 2022, Defendant Crawford made several false accusations and snark remarks towards or about Plaintiff. Specifically, at a social event in Baltimore, Maryland after Plaintiff attended a daily session at the AOP meeting at the Gaylord National Harbor. Defendant Crawford approached Plaintiff while out at a social event with colleagues stating that as her HR business partner,

there are going to be things that are going to upset her, and that Plaintiff was just going to have to deal with it.

29. On or around December 8, 2022, Plaintiff received a Zoom call from Defendant Crawford and her Manager Cyril Wallace. Defendant Crawford proceeded to make false statements concerning how other people viewed Plaintiff in the company. Defendant Crawford continued by stating that Plaintiff:

    a.  Had a presence that made people uncomfortable by how she carried herself because of her aggressive and abrasive behavior.

    b.  Walked around the office telling people she is the boss and that she controls people's careers at PepsiCo.

    c.  Yells at the team in the morning asking where her coffee is.

    d.  Makes a lot of excuses to the team.

    e.  Was acting strangely at events and making people uncomfortable, yet, Defendant Crawford was not present at said events in question.

    f.  Made others feel unwelcome to come to the Carolina's Market because she was a terrible leader.

    g.  Moved up very fast within the company and she should be mindful of that.

    h.  Had Direct Reports that didn't trust each other like other markets in the South Division do.

    i.  Has an "I" mentality and is selfish.

30. Defendant Crawford continued to lie and stated she did not have time for the Carolina's Market, where Plaintiff worked, or had time to visit that location, so she hired Travis Mulwee to be in the Carolina's.

31. Plaintiff reassured Defendant Crawford and her Manager Cyril Wallace that in the 10.5 years she had been working for PepsiCo, she had never had this issue or this kind of feedback from her team and to hear such statements was appalling to her and to present direct evidence of these statements. Crawford could not provide such evidence.

32. Plaintiff asked her if there was any positive feedback from the roundtable discussion which Defendant Crawford was unaware Plaintiff had already spoken to three Unit General Managers about. Defendant Crawford unrelentingly continued to lie and stated there was no positive feedback at all concerning the roundtable discussion or how the people within the company viewed her.

33. Plaintiff then brought up her annual MPW 360 feedback survey and stated to Defendant Crawford and her Manager Cyril Wallace that the surveys her team fills out always have been positive. The Plaintiff was immediately stopped and was told that her MPW 360 feedback surveys were irrelevant and were not a true reflection of how her team felt about her.

34. Plaintiff implored the matter of how she was supposed to keep track of her progress, but Plaintiff's Manager Cyril Wallace casually replied that there was nothing she could do if she had not made any indiscretions and to continue performing the way she was.

35. On December 20, 2022, Plaintiff received a phone call from Elizabeth Adams who was the current HR Senior Representative reporting to Defendant Crawford. During this phone call, Elizabeth stated she was currently out on FMLA due to being stressed out by work conditions, and while on FMLA Defendant Crawford called Elizabeth

Adams offering her a severance package claiming it was not a termination but to please refrain from suing. She also warned Plaintiff that Defendant Crawford was "out to get her" and was still imploring about any complaints or indiscretions made about her.

36. Plaintiff found out later that week from a peer who had previously worked extensively with Defendant Crawford, that Defendant Crawford had a lot of influence at the Division Office and that Defendant Michael Rady depended on her and whatever Defendant Crawford said to Division Leadership was accepted as true. In fact, Defendant Rady encouraged Crawford in discriminating against Plaintiff.

37. On March 2, 2023, while Plaintiff was speaking with a Senior Sales Support Director, he stated he was aware of her annual PDR score for 2022 and to not be alarmed when she received her annual review. Plaintiff was astonished that Defendant Crawford would disclose such personal information with her peer in violation of PepsiCo Policy and Confidential Employee Information. This was a direct violation of Defendant's Policy. In fact, Plaintiff had not spoken to her manager about her 2022 review, nor had she had her review yet.

38. In March 2023, Plaintiff received a text from the Vice President of the Sunbelt Region inquiring about a Manager in the Carolina's Market who he and his team were looking to promote in his region. Plaintiff informed the Vice President that the candidate was already a leader amongst her peers, but she did not have a lot of experience as she had been in her current role for less than a year. Later that day, Plaintiff received a phone call from Defendant Crawford accusing her of not being supportive of the promotion/move for the employee. Plaintiff reassured Defendant

Crawford her instincts were wrong and that was not the case by reading verbatim her texts between the Vice President and herself. This was yet another clear incident of Defendant Crawford making an unfounded accusation in carrying out the conspiracy against Plaintiff to destroy her leadership reputation and spotless work record.

39. While Plaintiff was attending a work trip at the Pepsi Beverages South Division from April 18 to April 20, 2023, Plaintiff was continuously encouraged by Defendant Michael Rady to have a private discussion concerning Plaintiff's interactions with Defendant Kristina Crawford. Due to time constraints, Plaintiff could not meet with Defendant Rady until the following day which he continuously pressed her about.

40. After Plaintiff's duties had concluded for the week, she met with Defendant Rady and was immediately bombarded with accusations that Defendant Crawford had made previously in December of 2022.

41. Defendant Rady subliminally began to accuse Plaintiff of:

   a) Not behaving like a leader because she told the team she was getting fired for the accident.

   b) Unreasonably inquiring about HR's presence at company locations.

   c) Using her title as a way to try and make Defendant Crawford feel less than a Director.

   d) Of being too visible because Plaintiff gave too much of herself to the team(s) and since Plaintiff was not married, she should remain unseen or heard.

   e) Exaggerating the pressure that was put on Defendant Crawford and using her race and Defendant Crawford's approach to things as an inhibitor to her success.

42. Defendant Rady continued to disparage Plaintiff's hard work and dedication and stated she should be willing to listen, and that Plaintiff's side of the story was irrelevant to the goal of PepsiCo. Defendant Rady continuously reiterated to Plaintiff that her use of race to demonstrate Defendant Crawford's hostile treatment towards her was risky and posed negative connotations that Plaintiff should be wary of.

43. Defendant Rady's solution to Plaintiff's issues with Defendant Crawford was to "kill Defendant Crawford with kindness" and to not take Defendant Crawford's actions as an attack or an investigation.

44. Out of fear of retaliation or being perceived as aggressive, Plaintiff remained silent throughout the rest of the conversation with Defendant Rady.

45. Beginning May 2023, Plaintiff, Defendant Crawford, and Travis Mulwee were assigned the preparation for the 2023 Talent Review Planning process for the South Division. However, only Plaintiff and Travis Mulwee assisted in the actual preparation for this talent review.

46. During this time, Defendant Crawford began to consistently spread lies about Plaintiff and her team to Senior Leadership which was appalling to Plaintiff since Defendant Crawford never met her team or spent time with them.

47. Beginning August 2023, while Plaintiff was on vacation, she received a call from Adonis Fisher, an African American who ran the Savannah location in the Carolina's Market. Adonis informed Plaintiff that he had assigned two drivers to go to Atlanta in the Georgia Market to help get trucks delivered but unfortunately, they failed to show up for work.

48. Plaintiff warmly reassured Adonis that things would be taken care of and to be mindful of what information he shared with others because Plaintiff was aware of how things could be taken out of context.

49. Plaintiff later received a call from Defendant Crawford making a mockery of the situation that occurred at the Georgia Market. Plaintiff politely informed Defendant Crawford she had spoken to Adonis and that hopefully the situation would be resolved soon because she did not want to broadcast the situation.

50. To Plaintiff's shock and dismay, she was rudely told by Defendant Crawford to "shut up" and that her colleague Adonis was most likely annoyed with her and that she needed to remain quiet.

51. In September of 2023, Plaintiff received another phone call from Defendant Crawford that she had spoken to Adonis Fisher. This was a shock to Plaintiff as she was Adonis's Direct Manager and should have been included in discussions around her Direct Reports in an effort to collaborate. This was yet another occurrence where Defendant Crawford intentionally undermined Plaintiff's authority and leadership as Senior GM Market Director.

52. Defendant Crawford later informed Plaintiff that she told Defendant Michael Rady that Plaintiff's Direct Report Adonis Fisher would most likely receive a low rating this year due to issues they were having with him. This was in complete contrast to previous reports Adonis had received in the past and an alarming revelation to Plaintiff as she was Adonis' Manager. This was also a complete deviation from the normal procedures for annual calibrations of PDRs since they were not calculated

until November or December of each year. Out of fear of retaliation, Plaintiff did not press the issue of Adonis' score any further.

53. Defendant Crawford at no point tried to discuss Adonis' score with Plaintiff before she met with Defendant Rady which was yet again a deliberate act on Defendant Crawford's part to undermine Plaintiff's authority and leadership.

54. On September 26, 2023, an African American Metter Unit General Manager, Terrell Madison interviewed for an Elevated Unit General Manager position in Newport News, VA with Defendant Crawford and VA Senior Market Director Adam Rosenberger.

55. On September 29, 2023, Plaintiff was informed by HR Senior Rep. for the Carolina's, Haley Histon that Defendant Crawford informed her that Terrell Madison performed poorly during his interview for the Newport News role. However, this statement by Defendant Crawford was a stark contrast to how VA Senior Market Director Adam Rosenberger stated Terrell Madison performed.

56. Later that day, Plaintiff was informed by Adam Rosenberger that Terrell performed well and asked Plaintiff what her overall opinion was concerning Terrell and the position he was applying for. Plaintiff informed Rosenberger that Terrell always performed well under her supervision and would be a great candidate for the position.

57. A week later Plaintiff spoke with Defendant Crawford via Zoom and discussed Terrell's interview. The Plaintiff was immediately stopped and told that the interview was atrocious. The Plaintiff hesitantly stated that this information was appalling to her as she was told his interview went well out of fear of being labeled as defensive or aggressive.

58. Plaintiff immediately noticed Defendant Crawford became anxious and did not have a legitimate reason as to why Terrell's interview went so poorly. Defendant Crawford assured Plaintiff she would report back to her with notes concerning the meeting but to Plaintiff's dismay, this never occurred.

59. On November 16, 2023, Plaintiff, left with no recourse or help from Defendant's Management, submitted her resignation due to the hostile work environment and false statements made against Plaintiff and her fellow African American colleagues.

60. During Plaintiff's last two weeks working for Defendant, she discovered that Defendant Crawford failed to include her in meetings regarding the Talent Review through Travis Mulwee. Plaintiff further inquired as to why she was not included in the meetings as she was still employed by Defendant and was told that is just how Defendant Crawford is.

61. When Plaintiff informed her Manager Cyril Wallace about her resignation and that one of the biggest factors as to why Plaintiff was resigning was how she was being treated by Defendant Crawford, he stated he was disappointed and that stated he would discuss with Defendant Rady the feedback Plaintiff gave him on Defendant Crawford. Plaintiff on multiple occasions tried to extend an olive branch to Defendant Crawford to come visit and shadow the Carolina's Market, but Defendant Crawford continuously had an excuse as to why she could not come or would not follow up.

62. Since Plaintiff's untimely resignation, she has been informed by former colleagues that Defendant Crawford continues to bring Plaintiff's name up in conversations and continues to make disparaging comments about Plaintiff and her leadership even though Plaintiff no longer works for Defendant. This is yet another example of

Defendant Crawford's relentless determination to undermine Plaintiff's leadership and authority as a Senior GM Market Director.

63. Plaintiff rarely spoke up or challenged anything during her last year of employment with Defendant out of extreme fear of retaliation and false narratives being sent up to higher levels of the organization. The Plaintiff ultimately felt it was in her best interest to take a new job opportunity before any additional personal, emotional, or reputation damage was done to her career.

<u>FIRST CAUSE OF ACTION</u>

*Race Discrimination and Hostile Work Environment in Violation of 42 U.S.C. §1981 against Defendant PepsiCo-Pepsi Beverages North America*

64. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

65. The Plaintiff is a member of a protected class on the basis of her race which is African American. Plaintiff was subjected to disparate treatment and a hostile work environment on the basis of her race due to Defendant and Defendant's agent's racially hostile treatment towards her in violation of 42 U.S.C § 1981.

66. Defendant, by and through their agents, began a pattern and practice of targeting Plaintiff through false accusations concerning Plaintiff's work ethic and had complete disregard for Plaintiff's concerns of racial discrimination and hostile work environment. Plaintiff's similarly situated Caucasian colleagues were not subjected to such treatment and scrutiny, and Defendant made no effort to protect Plaintiff from harassment from Defendants Kristina Crawford (HR Director) and Defendant Michael Rady (HR Vice President of South Division).

67. Plaintiff alleges that this racially hostile treatment on the job was pretextual to force Plaintiff's resignation from PepsiCo-Pepsi Beverages North America. Plaintiff further alleges that Defendant, through their agents, initiated discriminatory and hostile practices against Plaintiff which were reckless, wanton, and intentional race discrimination based on her race.

68. By knowingly allowing a workplace full of such racial hostility to exist which was so objectively and subjectively severe and pervasive, Defendant's agents created a racially hostile work environment that affected Plaintiff considerably.

69. In failing to protect Plaintiff from racial discrimination and a hostile work environment, Defendant and their agents acted with malice and reckless indifference to the federally protected rights set out under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et. seq.), the South Carolina Human Affairs Law and the United States Equal Employment Opportunity Laws.

70. Plaintiff alleges that Defendant, through their agents, initiated discriminatory practices against Plaintiff undermining Plaintiff's position, ignoring her concerns with Defendant Crawford's hostility towards her, and disparately treating Plaintiff differently than his similarly situated Caucasian colleagues based on her race.

71. As a result of Defendant's race discrimination and Plaintiff's exposure to a racially hostile work environment created by Defendant, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendant due to their unlawful treatment of Plaintiff.

<u>SECOND CAUSE OF ACTION</u>

*Breach of Contract as to Defendant PepsiCo-Pepsi Beverages North America*

72. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

73. Plaintiff and Defendant entered into a binding and valid contract whereby Defendant offered Plaintiff employment. Plaintiff accepted the offer of employment and agreed to fulfill her duties as Senior GM Market Director in exchange for valuable consideration, her salary, and Defendant's guarantee that he would be protected from discrimination and a hostile work environment.

74. Defendant maintains an employment handbook and its mandatory policies and procedures.

75. Plaintiff continuously and diligently worked for Defendant for 11.5 years and loved her position as Senior GM Market Director.

76. At all times during her employment, Plaintiff relied on the promises contained in Defendant's handbook, policies, procedures, and governing documents.

77. Defendant breached its employment contract with Plaintiff and its policies and procedures between September 23, 2022, and November 16, 2023, by failing to protect Plaintiff from racial discrimination and a hostile work environment.

78. Defendant failed to consider Plaintiff's work environment concerns and instead, they ignored and undermined Plaintiff's authority and leadership as Senior GM Market Director.

79. Defendant's adverse actions created undue stress and a hostile work environment based upon Plaintiff's race.

80. Defendant has unjustifiably failed to perform the employment contract with Plaintiff by forcing Plaintiff to resign without a proper investigation into the fraudulent statements made by Defendant's agents concerning Plaintiff's job performance.

81. As a direct and proximate result of Defendant's breach of contract Plaintiff has suffered from anxiety, embarrassment, humiliation, and stress.

82. Therefore, Plaintiff is entitled to injunctive relief and/or civil damages.

<u>THIRD CAUSE OF ACTION</u>

*Breach of Contract Accompanied with Fraudulent Intent as to Defendant PepsiCo-Pepsi Beverages of North America*

83. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

84. Defendant, by and through their agents, have breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.

85. In furtherance of such an intentional design, Defendant, through their agents, intentionally and maliciously placed Plaintiff in a position to be subjected to extreme hostility and disparate treatment under the guise of fraudulent performance reviews. Through Plaintiff's contract with Defendant, Defendant ensured that Plaintiff would not be subjected to racially disparate treatment, harassment, and other policy violations which Defendant continuously meted out to Plaintiff.

86. It became readily apparent to Plaintiff that Defendant's reassurances and the consistent fraudulent statements made by Defendant Crawford concerning Plaintiff's job performance were done as a pretext to force Plaintiff to resign while violating their own policies.

87. The Defendant's conduct, by and through their agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

88. As a result of Defendant's race discrimination and exposure to Plaintiff to Defendant's fraudulent breaches of contract, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendant on account of their unlawful treatment of Plaintiff and fraudulent contractual breaches.

<u>FOURTH CAUSE OF ACTION</u>

*Civil Conspiracy as to the Defendants Kristina Crawford and Michael Rady in their individual and official capacities*

89. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

90. Between September 23, 2022, and November 16, 2023, Defendants planned and conspired with each other to force Plaintiff's resignation by pretextually creating a hostile work environment for Plaintiff through racial remarks, harassment, and undermining of Plaintiff's position as a Senior GM Market Director through fraudulent statements concerning Plaintiff's job performance with no investigation into the matter.

91. The Defendants conspired with one another to paint Plaintiff in a negative light to force her untimely resignation from PepsiCo-Pepsi Beverages North America.

92. The Defendants were aware of Plaintiff's concerns about the hostile work environment she was subjected to through Defendant Crawford's actions, but Defendants deliberately ignored Plaintiff's concerns to force her resignation.

93. Defendants Crawford and Rady conspired amongst each other to make fraudulent statements and reports concerning Plaintiff's work performance such as Plaintiff had created a hostile work environment for her employees and that she was not a team player. Ironically, it was the Defendants who created a hostile work environment for Plaintiff to compel Plaintiff's resignation.

94. The natural consequence of the Defendants' combined actions caused special damages to Plaintiff apart from any other damages placed herein. Specifically, the acts in the furtherance of this conspiracy, as alleged, have and will continue to cause Plaintiff special damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and further non-pecuniary losses.

95. Accordingly, due to the acts of Defendant and its agents, Plaintiff is entitled to injunctive relief and civil damages from the Defendants.

<u>PRAYER FOR RELIEF</u>

**Wherefore**, the Plaintiffs pray for the following:

1. That Plaintiffs are granted all their claims.

2. That Plaintiff is granted severance, lost wages, and back pay.

3. That Defendants are denied all counterclaims and defenses.

4. For Attorney's fees and cost to prosecute this action

5. For a Jury Trial.

6. For actual, special, consequential, and punitive damages.

7.  For such and other awards as this Honorable Court deems just and proper.


                                              Respectfully Submitted,

                              s/Donald Gist_____
                                              Donald Gist (13098)
                              GIST LAW FIRM, P.A. 4400 North Main Street
                                   Columbia, South Carolina 29203
                                            Tel. (803) 771-8007
                                            Fax (803) 771-0063
                                   Email: dtommygist@yahoo.com

                                              Attorney for Plaintiff

July 26, 2024